ORIGINAL

# In the United States Court of Federal Claims

Pro Se
No. 15-746C
Filed: November 23, 2015

FILED
NOV 2 3 2015
U.S. COURT OF
FEDERAL CLAIMS

|  |  |
|---|---|
| CLYDE CALVIN GRADY II, | ) |
| Plaintiff, | ) |
| v. | ) 15 U.S.C. § 78a; Securities and Exchange Act of 1934; Implied-in-fact contact; Implied-in-law contract; RCFC 12(b)(1). |
| THE UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

*Clyde Calvin Grady II*, Jacksonville, FL, Plaintiff, *pro se*.

*Sarah Choi*, Trial Attorney, with whom were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Steven J. Gillingham*, Assistant Director, Commercial Litigation Branch, United States Department of Justice, Washington, DC, for Defendant.

## OPINION AND ORDER

**Kaplan, Judge**.

Plaintiff, Clyde Calvin Grady II, appearing pro se, filed this action on July 16, 2015. Mr. Grady alleges breach of a contract between the United States and investors in the United States stock market, claiming that such contract was created when Congress enacted the Securities Exchange Act of 1934, 15 U.S.C. § 78a, et seq., and subsequent legislation. Complaint ("Compl.") ¶ 1. According to Mr. Grady, this contract "obligated the Congress to take action necessary to ensure the 'maintenance of a fair and orderly' U.S. Stock Market for the 'protection of investors.'" Id. He claims that Congress breached this obligation by failing to conduct oversight of the Securities and Exchange Commission that was needed to ensure the maintenance of a fair and orderly stock market. Compl. ¶¶ 4.30; 4.57. Mr. Grady alleges that as a result of the government's failures, he sustained losses amounting to $106,935.92 on May 6, 2010—the day of the so-called "Flash Crash." Compl. ¶ 4.58.

Currently before the Court is the government's motion to dismiss the complaint pursuant to Rules of the Court of Federal Claims ("RCFC") 12(b)(1) and 12(b)(6). For the reasons set forth below the Court concludes that it lacks jurisdiction over the complaint and, accordingly, it **GRANTS** the government's motion to dismiss pursuant to RCFC 12(b)(1).

## BACKGROUND [1]

Congress enacted the Securities Exchange Act of 1934 "to provide for the regulation of securities exchanges and of over-the-counter markets operating in interstate and foreign commerce and through the mails, [and] to prevent inequitable and unfair practices on such exchanges and markets." Compl. ¶¶ 4.2–4.3 (quoting the preamble to the Securities Exchange Act, Pub. L. 73-291, 48 Stat. 881 (1934)). In his complaint Mr. Grady alleges that Congress's objective in the original Securities Exchange Act legislation, as well as in all of its subsequent amendments, in essence, was to maintain a fair and orderly stock market for the protection of investors. Compl. ¶¶ 4.5–4.7; 4.18; 4.20.

Mr. Grady claims that in taking upon itself an obligation to maintain a fair and orderly stock market for the protection of investors in the Securities Exchange Act of 1934, Congress initiated a unilateral contract between the government and investors in the stock market. Compl. ¶¶ 4.21–4.23; 4.30. According to Mr. Grady, the act of investors investing their funds in the stock market constituted consideration given to the government for that promise. Id. Mr. Grady further asserts in the alternative that Congress entered into an implied-in-fact contract that can be inferred through its conduct, i.e., its enactment of various pieces of legislation to control the stock market. Compl. ¶¶ 4.26; 4.29–4.30.

Mr. Grady's alleged damages for stock losses are attributed to the so-called "Flash Crash." Compl. ¶ 4.58. The Flash Crash occurred on May 6, 2010, and refers to when the Dow Jones Industrial Average dropped nearly a thousand points during the half hour between 2:30 and 3:00 p.m. Compl. ¶ 4.35. Individual investors, like Mr. Grady, are claimed to have suffered losses of more than $200 million as a result of the unintended consequences of a widely used investment tool known as a "stop-loss order." Compl. ¶¶ 4.37–4.38; 4.41–4.42. This tool was designed as a means to limit losses by selling a stock when it drops below a certain price. Compl. ¶ 4.41. During the Flash Crash, however, the stop-loss orders instigated unwanted sales of stocks at prices far below their true market value. Compl. ¶¶ 4.37–4.38; 4.41–4.42.

Mr. Grady argues that the Flash Crash could have been prevented if Congress had taken appropriate measures to maintain a fair and orderly stock market pursuant to the Securities Exchange Act of 1934. Specifically, Mr. Grady asserts, Congress failed to ensure the proper implementation of legislation to deal with issues concerning the removal of the "uptick" rule, naked short selling, high frequency traders, and the elimination of "specialists." Compl. ¶¶ 4.20; 4.38–4.57. Mr. Grady contends that because Congress did not address these issues through oversight or other legislative action, it breached its promise to maintain a fair and orderly stock market, and as a result, Mr. Grady lost $106,935.92.

## DISCUSSION

In ruling on a motion to dismiss, the Court assumes all undisputed factual allegations to be true and construes all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416

---

[1] The assertions contained in this section are taken from Mr. Grady's complaint. For purposes of deciding the government's motion to dismiss, the Court assumes that all factual allegations in the complaint are true.

U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). In considering a motion to dismiss for lack of subject matter jurisdiction, the court may "inquire into jurisdictional facts" to determine whether it has jurisdiction. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. Brandt v. United States, 710 F.3d 1369, 1373 (Fed. Cir. 2013). Pro se plaintiffs are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Nonetheless, even pro se plaintiffs must persuade the Court that jurisdictional requirements have been met. Bernard v. United States, 59 Fed. Cl. 497, 499 (2004), aff'd, 98 F. App'x 860 (Fed. Cir. 2004).

In this case, Mr. Grady has failed to establish that his claims are within the jurisdiction of this Court. Pursuant to the Tucker Act, the United States Court of Federal Claims may hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). The Tucker Act serves as a waiver of sovereign immunity and a jurisdictional grant, but it does not create a substantive cause of action. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008). A plaintiff, therefore, must establish that "a separate source of substantive law . . . creates the right to money damages." Id. (quoting Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part)).

Here, Mr. Grady seeks to rest this Court's Tucker Act jurisdiction on the claim that—by failing to conduct oversight that Mr. Grady alleges would have averted the Flash Crash—the United States Congress breached either a unilateral or implied-in-fact contract that it entered with investors by enacting the Securities and Exchange Act of 1934, the 1975 amendments to that Act, and other related legislation. The first and most obvious problem with this theory is that it collides with the well-established principle that the government's "performance of its regulatory or sovereign functions does not create contractual obligations." D&N Bank v. United States, 331 F.3d 1374, 1378–79 (Fed. Cir. 2003).

Further, although Mr. Grady claims that the contract at issue is one that is implied-in-fact, he does not allege a meeting of the minds between an authorized representative of the government and himself regarding some specific goods or services. An implied-in-fact contract is founded upon a meeting of the minds regarding specific terms of an agreement, "which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." Hercules, Inc. v. United States, 516 U.S. 417, 424 (1996) (quoting Baltimore & Ohio R. Co. v. United States, 261 U.S. 592, 597 (1923)); see also City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990) (holding that an implied-in-fact contract requires "(1) mutuality of intent to contract; (2) consideration; and, (3) lack of ambiguity in offer and acceptance"). Nor does he allege with any specificity what the terms were of this supposed implied contract. Rather, he identifies a general aspirational goal of the securities laws—to maintain a fair and orderly stock market. Compl. ¶¶ 4.2–4.3. He then makes a rather substantial leap of logic, arguing that, by enacting legislation with this general goal, Congress evinced an intent that it would be contractually obligated to ensure that the legislation's general goal was met through oversight. Compl. ¶¶ 4.29–4.30.

In effect, what the complaint alleges is that a contract between Congress and all investors in the stock market should be imputed from Congress' exercise of its sovereign functions of enacting legislation with a particular legislative goal in mind. This is a truly extraordinary proposition. More to the point, such allegations, at best, suggest the existence of an implied-in-law contract. See Hercules, 516 U.S. at 424 ("[A]n agreement implied in law is a 'fiction of law' where 'a promise is imputed to perform a legal duty . . . .'") (quoting Baltimore & Ohio R. Co., 261 U.S. at 597). The Tucker Act, however, does not provide this Court with jurisdiction to consider alleged breaches of an implied-in-law contract. Id. at 423 (citing Merritt v. United States, 267 U.S. 338, 341 (1925)).

Finally, the Court notes that Mr. Grady raised claims very similar to those he is making here in an action he filed in this Court in 2013. See Compl., Grady v. United States, No. 1:13-cv-00015 (Fed. Cl. Jan. 7, 2013), ECF No. 1. While Mr. Grady claims a breach of contract by Congress in this case, in No. 13-15C he argued that the United States, acting through the Securities and Exchange Commission, had breached an implied-in-fact contract by failing to discharge its statutory duty to maintain a fair and orderly stock market. See id. He further argued that as a result of this breach, and in the wake of the Flash Crash, he suffered losses in the amount of $106,935.62. Id.

On July 31, 2013, the Court of Federal Claims dismissed Mr. Grady's complaint for lack of subject matter jurisdiction. Opinion and Order at 1, Grady, No. 1:13-cv-00015, ECF No. 13. Mr. Grady appealed that decision to the United States Court of Appeals for the Federal Circuit, which affirmed on May 7, 2014. Grady v. United States, 565 F. App'x 870 (Fed. Cir. 2014). Mr. Grady then filed a petition for a writ of certiorari to the Federal Circuit, which the Supreme Court denied on October 6, 2014. Grady v. United States, 135 S. Ct. 245 (2014).

In light of the prior litigation, the government has argued in this case that the doctrine of collateral estoppel bars Mr. Grady from re-litigating the issue of this Court's jurisdiction. While the government's arguments are not without some force, the Court finds it unnecessary to reach them, given its conclusion that it clearly lacks jurisdiction over the contract claims Mr. Grady has articulated in this case.

## CONCLUSION

On the basis of the foregoing, the government's motion to dismiss pursuant to RCFC 12(b)(1) is **GRANTED** and the complaint is **DISMISSED** without prejudice. Each side shall bear its own costs. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

ELAINE D. KAPLAN
Judge